Jason M. Ingber, Esq. (SBN 318323)
ji@jasoningber.com
Serach B. Shafa, Esq. (SBN 358332)
ss@jasoningber.com
**INGBER LAW GROUP**
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
Telephone: (213) 805-8373

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YEHUDA LERMAN; MICHAEL PREVULSKY; SUSAN PATTERSON; ABHIJIT RAO; JUAN GUARDADO; DONALD BAUMGARTNER; ARAM AVEDISIAN; JULIE A. DOUMIT; JEFFERY VANHOEPEN; SHAUN FINN; JASON BRYAN FONG; GARY BORQUEZ; LISA WILLIS; SARA ORNELAS; GENE PALENO; KENNETH ZWICKER; LEE BROOKS; BRANDON BONACHEA; PIERINA DANISI; SHAYAN SHAHIDI ZANDI; JULIO LORIA; PATRICK METZKER; AMREET SAINI; SILVESTRE SOLANO; DIONYSIOS TSIRKAS; CELIA DOHRMAN; RAMIN SHIRAZI; CARLOS FLETCHER; PATRICK HUGHES; ROBERT KANG; MIGUEL CONRIQUE; SANDRA SILVA; MARIA RODRIGUEZ; JEFF CARTA; ANDI WOO; HYONG KIUN LEE; LAILA DAKELBAB; MOHAMMAD ZAHER DAKELBAB; | Case No. <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> 1. **Violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)** <br> 2. **Violations of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)** <br> 3. **Violations of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 et seq.)** <br> 4. **Breach of Contract / Promissory Estoppel** <br> 5. **Violations of California Business and Professions Code § 17200 et seq.** <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

JUNKO TANAKA; MICHELE MARINO; HUNG DO; CHRISTOPHER KNAUF; ALEJANDRO KING; JOANNE QIU; JUAN CARLOS RODRIGUEZ; MARIANNE D. QUINTERO OCHOA; ROMAN OULKO; ALEKSEY ULKO; VIJAY SHAH; LUIS PADILLA; WILL PLUMMER; TOMMY LI; MICHAEL HART; STEVEN RAASCH; MISCHANA ARNOLD; PATRICK CYCCONE; DEVEN PERKINS; ABBY TROWBRIDGE; ROGER SEGURA; DANAIL DIVIZIEV; LAWRENCE GARMON; KEITH TOM; LUIS VILLEGAS; BADIH ARANOUT; AMBER DELGADO; ERIKA CESSNA; NICHOLAS SPRUCK; ANTONELLO DATO; DANIEL SANGRONIS; DEBORAH ALVAREZ; JORGE TAPIA PLANCARTE; JAMES LEE; CARMEN HURTADO; LUIS JURADO; MITCH RAMSEY; MICHAEL RUNYAN and STEVEN COLLINS; NADJAH JONES; ALLEN KHANYAN; BRANDON NGUYEN; ADOLFO RIEDEL; BERTHA BRISENO; NATACHA PAGAN; CENET CASTRO; ANTHONY ESCOBEDO; SAHIL ALAM; KIM CHAN; LISA CROSBY; JOSE SALINAS, and DANIELLE PIGNERI,

Plaintiffs,

v.

TOYOTA MOTOR SALES USA, INC.; TOYOTA MOTOR NORTH AMERICA, INC.; TOYOTA

MOTOR CREDIT CORPORATION and DOES 1 through 10, inclusive,

Defendants.

## INTRODUCTION

1. Plaintiffs Yehuda Lerman, Michael Prevulsky, Susan Patterson, Abhijit Rao, Juan Guardado, Donald Baumgartner, Aram Avedisian, Julie A. Doumit, Jeffery Vanhoepen, Shaun Finn, Jason Bryan Fong, Gary Borquez, Lisa Willis, Sara Ornelas, Gene Paleno, Kenneth Zwicker, Lee Brooks, Brandon Bonachea, Pierina Danisi, Shayan Shahidi Zandi, Julio Loria, Patrick Metzker, Amreet Saini, Silvestre Solano, Dionysios Tsirkas, Celia Dohrman, Ramin Shirazi, Carlos Fletcher, Patrick Hughes, Robert Kang, Miguel Conrique, Sandra Silva, Maria Rodriguez, Jeff Carta, Andi Woo, Hyong Kiun Lee, Laila Dakelbab, Mohammad Zaher Dakelbab, Junko Tanaka, Michele Marino, Hung Do, Christopher Knauf, Alejandro King, Joanne Qiu, Juan Carlos Rodriguez, Marianne D. Quintero Ochoa, Roman Oulko, Aleksey Ulko, Vijay Shah, Luis Padilla, Will Plummer, Tommy Li, Michael Hart, Steven Raasch, Mischana Arnold, Patrick Cyccone, Deven Perkins, Abby Trowbridge, Roger Segura, Danail Diviziev, Lawrence Garmon, Keith Tom, Luis Villegas, Badih Aranout, Amber Delgado, Erika Cessna, Nicholas Spruck, Antonello Dato, Daniel Sangronis, Deborah Alvarez, Jorge Tapia Plancarte, James Lee, Carmen Hurtado, Luis Jurado, Mitch Ramsey, Michael Runyan, Steven Collins, Nadjah Jones, Allen Khanyan, Brandon Nguyen, Adolfo Riedel, Bertha Briseno, Natacha Pagan, Cenet Castro, Anthony Escobedo, Sahil Alam, Kim Chan, Lisa Crosby, Jose Salinas, and Danielle Pigneri (collectively "Plaintiffs") bring this action against Defendants Toyota Motor Sales USA, Inc. ("TMS"), Toyota Motor North America, Inc. ("TMNA"), and Toyota Motor Credit Corporation ("TMCC") (collectively

"Toyota Defendants" or "Defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 et seq.

2. This action arises from Defendants' systematic breach of explicit promises made to Plaintiffs to cease debt enforcement activities and their subsequent wrongful negative credit reporting and collection activities against Plaintiffs, causing substantial harm to Plaintiffs' credit standing and subjecting them to unlawful harassment.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises under federal law, specifically the FDCPA and FCRA. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) (FDCPA) and 15 U.S.C. § 1681p (FCRA).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because one or more Defendants reside in this District.

## PARTIES

6. All Plaintiffs are natural persons and residents of California, and are "consumers" as defined by 15 U.S.C. § 1692a(3), 15 U.S.C. § 1681a(c), and California Civil Code § 1788.2(h).

7. Defendant TOYOTA MOTOR SALES USA, INC. is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMS regularly conducts business in California and this judicial district.

8. Defendant TOYOTA MOTOR NORTH AMERICA, INC. is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMNA regularly conducts business in California and this judicial district.

9. Defendant TOYOTA MOTOR CREDIT CORPORATION is a California corporation with its principal place of business at 6565 Headquarters Drive, Plano, Texas 75024. TMCC is engaged in the business of extending credit and collecting debts owed or due or asserted to be owed or due to others, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and California Civil Code § 1788.2(c). TMCC regularly furnishes information to consumer reporting agencies and is a "furnisher" under 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### Common Allegations

10. Each Plaintiff entered into retail installment sales contracts and/or lease agreements with Defendants for the purchase or lease of Toyota vehicles.

11. Disputes arose between Plaintiffs and Defendants regarding various issues including, but not limited to, warranty claims, billing disputes, vehicle defects, and account servicing issues.

12. Following negotiations between the parties, counsel for Toyota Defendants made oral promises to each Plaintiff and/or their representatives that Defendants would cease all debt enforcement activities related to their accounts.

13. These oral promises were memorialized in writing via emails from Toyota's counsel, wherein Toyota Defendants explicitly confirmed their agreements to cease debt enforcement activities against each Plaintiff.

14. The emails from Toyota's counsel constituted clear and unequivocal promises that Defendants would: a. Cease all collection activities; b. Not pursue the alleged debts further; and c. Not engage in negative credit reporting related to the accounts.

15. Each Plaintiff reasonably and detrimentally relied on these promises, believing their matters to be concluded.

**Defendants' Breach and Unlawful Conduct**

16. Despite their explicit promises to each Plaintiff, Defendants engaged in a pattern of breaching these agreements by: a. Continuing collection attempts through calls, letters, and other communications; b. Furnishing negative information to consumer reporting agencies; c. Reporting accounts as delinquent, charged-off, or in collections to credit bureaus; d. Harassing Plaintiffs and their family members regarding the alleged debts.

17. Defendants' negative credit reporting has appeared on Plaintiffs' credit reports from Experian, Equifax, and/or TransUnion, substantially damaging their creditworthiness and credit scores.

18. The negative credit reporting includes, but is not limited to: a. Reporting of late payments; b. Reporting of charged-off status; c. Reporting of collection status; d. Reporting of derogatory payment history.

19. Defendants have refused to correct or remove the negative credit reporting despite their promises to cease debt enforcement activities.

20. Defendants' actions were willful, intentional, and in reckless disregard of Plaintiffs' rights under federal and state law.

21. Defendants maintain centralized policies and procedures for debt collection and credit reporting that are uniformly applied to all consumers, including Plaintiffs.

22. Despite having the ability to flag accounts where collection cessation has been promised, Defendants systematically fail to implement proper controls, resulting in continued collection and credit reporting in violation of their agreements.

23. Plaintiff Christopher Knauf's experience exemplifies Defendants' systematic pattern of breaching explicit promises and causing severe financial harm

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

to consumers despite multiple notices and assurances.  Here is the harassment by Toyota on their customer Mr. Knauf.

24. Beginning in July 2025, Mr. Knauf and his representatives provided Defendants with repeated notice regarding his account (Account Number: 704-026-6464977-0001; Vehicle: 2021 Toyota Mirai; VIN: JTDAAAAA4MA001067).

25. On or about July 30-31, 2025, Mr. Knauf's spouse reported to Plaintiffs' counsel that they had skipped their July payment based on Toyota's prior assurances that collection activities would cease, yet Toyota improperly invoiced them for a double August payment plus late fees.

26. On August 4, 2025, despite prior communications, Defendants sent Mr. Knauf a formal Debt Validation Notice indicating his account was in default and arrears, demonstrating Defendants' continued collection efforts.

27. On August 8, 2025, Mr. Knauf received and forwarded to counsel a collection text message from Defendants, further evidencing ongoing collection harassment.

28.  On August 11, 2025, Plaintiffs' counsel explicitly identified Christopher H. Knauf and his vehicle (VIN: JTDAAAAA4MA001067) as a top priority case to Defendants' counsel, who confirmed that Toyota would identify affected accounts "by name only" and add VINs as needed.

29. On August 14, 2025, a formal Debt Dispute Form containing Mr. Knauf's name, account number, and VIN was faxed to Defendants.

30. On September 3, 2025, Mr. Knauf, through counsel, sent another debt dispute form directly to Toyota, explicitly stating he was represented by counsel and demanding cessation of all collection efforts.

31.  On September 8, 2025, Defendants' counsel provided written assurances that: a. Communications to Mr. Knauf "should stop within 2-6 weeks"; b. "Toyota will reach out to the credit agencies and will remove any marks that might have slipped through for any non-payments" (a horrifying back stop safety for

consumers); and c. Toyota would "stop negative reporting" (this is the real promise that has value, a cessation of prosecution under these specific car loans).

32. Despite receiving at least six separate notices about Mr. Knauf's account between July 30 and September 8, 2025, and despite explicit written promises to cease credit reporting, Defendants willfully submitted negative credit information to consumer reporting agencies in September 2025.

33. On September 24, 2025, Mr. Knauf discovered that Toyota Financial had reported late payments to credit reporting agencies, causing his credit score to plummet approximately 100 points.

34. As a direct and proximate result of Defendants' wrongful credit reporting, Mr. Knauf suffered immediate and tangible financial harm, including but not limited to: a. Being removed from a Home Equity Line of Credit (HELOC) mortgage application; b. Loss of access to favorable credit terms; c. Substantial damage to his creditworthiness; and d. Emotional distress and frustration from Defendants' broken promises.

35. Mr. Knauf's wife confirmed the real-world consequences, stating that "because Chris' credit score decreased so significantly, our loan officer advised that we had to take him off the loan application for our HELOC."

36. Defendants' treatment of Mr. Knauf demonstrates a pattern of: a. Ignoring multiple notices of representation by counsel; b. Making false promises to cease collection and credit reporting; c. Failing to implement proper internal controls to honor cessation agreements; d. Causing severe financial harm through wrongful credit reporting; and e. Acting with willful disregard for consumers' rights.

37. Despite Mr. Knauf providing Defendants with documentation of the credit damage on September 26, 2025, Defendants have failed to correct or remove the negative credit reporting as promised.

38. Defendants' conduct toward Mr. Knauf was particularly egregious given that they had actual knowledge of his disputed account, received multiple notices

over a two-month period, made explicit written promises through counsel to cease all enforcement activities, and still proceeded to damage his credit in violation of those promises.  However, Toyota has harmed each and every named Plaintiff in a similar fashion.

39. The experiences of Plaintiff Christopher Knauf are representative of a broader, uniform course of conduct directed at all Plaintiffs. Each Plaintiff entered into a consumer credit or lease relationship with Defendants, engaged in dispute or settlement communications through counsel, and received express or implied assurances from Defendants or their agents that debt enforcement and negative credit reporting would cease. Despite these promises, Defendants continued to engage in unlawful collection efforts and to furnish derogatory credit information concerning Plaintiffs' accounts. The same pattern of broken promises, continued collection activity, and wrongful credit reporting occurred across all Plaintiffs, demonstrating a systematic and policy-driven practice rather than isolated error. Each Plaintiff suffered substantial harm to credit reputation, emotional distress, and financial injury as a direct and foreseeable result of Defendants' actions.

40.  Each and every Plaintiff in this action directly communicated to Defendants, both personally and through authorized representatives, that they were represented by counsel in connection with their disputed accounts.

41. Each Plaintiff provided Defendants with their counsel's contact information, including but not limited to the names, address, telephone numbers, and email addresses of their legal representatives.

42.  Despite receiving clear and unequivocal notice that Plaintiffs were represented by counsel, Defendants engaged in a systematic pattern and practice of continuing to directly contact Plaintiffs through: a. Repeated collection calls to Plaintiffs' personal and work telephone numbers; b. Text messages sent directly to Plaintiffs' mobile devices; c. Collection letters mailed to Plaintiffs' residences; d.

Automated voice messages left on Plaintiffs' voicemail systems; and e. Other direct communications bypassing Plaintiffs designated legal counsel.

43.  Defendants continued direct contact with represented Plaintiffs constitutes a willful and knowing violation of established debt collection laws and demonstrates a company-wide policy or practice of disregarding consumers' rights to representation.

44. Defendants maintain systems and databases capable of flagging accounts where consumers are represented by counsel yet systematically failed to properly code or flag Plaintiffs' accounts to prevent improper direct contact.

45. The volume of Defendants' improper contacts after notice of representation demonstrates that these violations were not isolated incidents or mistakes, but rather the result of escalated debt collection activity on their customers after knowledge that they were in communications via counsel.

46. Defendants' conduct has forced Plaintiffs to repeatedly inform Defendants' agents and collectors that they are represented by counsel, causing additional stress, anxiety, and frustration beyond the harm from the collection activities themselves.

47. Upon information and belief, Defendants have actual or constructive knowledge that directly contacting consumers known to be represented by counsel violates the Fair Debt Collection Practices Act yet chose to engage in such conduct as a standard business practice.

**FIRST CAUSE OF ACTION**

**Violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)**

**(Against All Defendants)**

48. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

49. The obligations that Defendants attempted to collect from Plaintiffs constitute "debts" as defined by 15 U.S.C. § 1692a(5).

50. Defendants violated 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiffs regarding debts when Defendants knew Plaintiffs were represented by attorneys with respect to such debts.

51. Defendants violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiffs in connection with the collection of debts.

52. Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of debts, including but not limited to: a. Misrepresenting the character, amount, or legal status of debts (§ 1692e(2)); b. Making false representations regarding their intention to cease collection activities (§ 1692e(10)); c. Threatening to take action that could not legally be taken or that was not intended to be taken (§ 1692e(5)).

53. Defendants violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect debts.

54. As a result of Defendants' violations of the FDCPA, Plaintiffs have suffered actual damages including, but not limited to, damage to credit reputation, emotional distress, anxiety, frustration, and economic losses.

55. Defendants' violations were willful and intentional, entitling each Plaintiff to statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

**SECOND CAUSE OF ACTION**

**Violations of the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)**

**(Against All Defendants)**

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

57. Defendants are "furnishers" of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

58. Defendants violated 15 U.S.C. § 1681s-2(a) by: a. Furnishing information to consumer reporting agencies that Defendants knew was inaccurate; b. Failing to correct and update information provided to consumer reporting agencies after being notified that the information was inaccurate or incomplete; c. Furnishing negative information after promising to cease debt enforcement activities.

59. Defendants violated 15 U.S.C. § 1681s-2(b) by failing to: a. Conduct reasonable investigations of Plaintiffs' disputes; b. Review all relevant information provided by the consumer reporting agencies; c. Report the results of their investigations to consumer reporting agencies; d. Correct inaccurate or incomplete information; e. Modify, or permanently block the reporting of disputed information.

60. Defendants' violations were willful, or in the alternative, negligent.

61. As a direct and proximate result of Defendants' violations, Plaintiffs have suffered actual damages including: a. Denial of credit or less favorable credit terms; b. Damage to credit reputation and creditworthiness; c. Emotional distress; d. Time and expense incurred attempting to correct inaccurate reporting; e. Economic losses.

62. Pursuant to 15 U.S.C. § 1681n, Plaintiffs are entitled to actual damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees for Defendants' willful violations.

63. Pursuant to 15 U.S.C. § 1681o, Plaintiffs are entitled to actual damages, costs, and reasonable attorneys' fees for Defendants' negligent violations.

## THIRD CAUSE OF ACTION

**Violations of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 et seq.)**

**(Against All Defendants)**

64. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

65. The Rosenthal Act incorporates by reference the violations and remedies of the FDCPA. Cal. Civ. Code § 1788.17.

66. Defendants violated California Civil Code § 1788.10 by engaging in unfair or unconscionable collection activities.

67. Defendants violated California Civil Code § 1788.11 by using false, deceptive, or misleading representations in connection with the collection of debts.

68. Defendants violated California Civil Code § 1788.12 by engaging in conduct that harassed, oppressed, or abused Plaintiffs.

69. Defendants violated California Civil Code § 1788.13 by making false representations concerning the character, amount, or legal status of debts.

70. Defendants violated California Civil Code § 1788.14 by using unfair or unconscionable means in attempting to collect debts, including collecting or attempting to collect debts after promising to cease such activities.

71. As a direct and proximate result of Defendants' violations of the Rosenthal Act, Plaintiffs have suffered actual damages.

72. Pursuant to California Civil Code § 1788.30, each Plaintiff is entitled to actual damages, statutory damages of up to $1,000, costs, and reasonable attorneys' fees.

73. Defendants' violations were willful and intentional, entitling Plaintiffs to punitive damages.

### FOURTH CAUSE OF ACTION

### Breach of Contract / Promissory Estoppel

### (Against All Defendants)

74. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

75. Defendants, through their authorized counsel, made clear and unambiguous promises to each Plaintiff to cease all debt enforcement activities.

76. These promises were memorialized in writing and constituted either enforceable contracts or, alternatively, promises upon which Defendants should have reasonably expected Plaintiffs to rely.

77. Each Plaintiff reasonably and foreseeably relied on these promises to their detriment.

78. Defendants breached these agreements by continuing collection activities and engaging in negative credit reporting.

79. As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered damages including injury to credit reputation, emotional distress, and economic losses.

80. Justice requires enforcement of Defendants' promises to prevent injustice to Plaintiffs.

## FIFTH CAUSE OF ACTION

### Violations of California Business and Professions Code § 17200 et seq.

### (Against All Defendants)

81. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

82. California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice.

83. Defendants' conduct as alleged herein constitutes unlawful business practices in violation of § 17200 because it violates the FDCPA, FCRA, and Rosenthal Act.

84. Defendants' conduct constitutes unfair business practices because it offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

85. Defendants' conduct constitutes fraudulent business practices because it is likely to deceive members of the public, including making false promises to cease debt collection activities.

86. Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' unfair competition.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

87. Pursuant to Business and Professions Code § 17203, Plaintiffs are entitled to restitution and injunctive relief.

88. Justice requires enforcement of Defendants' promises to prevent injustice to Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

1. For actual damages for each Plaintiff according to proof at trial;

2. For statutory damages of $1,000 per Plaintiff under the FDCPA pursuant to 15 U.S.C. § 1692k;

3. For statutory damages for each Plaintiff under the FCRA pursuant to 15 U.S.C. § 1681n;

4. For statutory damages of $1,000 per Plaintiff under the Rosenthal Act pursuant to California Civil Code § 1788.30;

5. For punitive damages for willful violations of the FCRA and Rosenthal Act;

6. For restitution under California Business and Professions Code § 17203;

7. For injunctive relief requiring Defendants to: a. Cease all collection activities regarding the alleged debts for all Plaintiffs; b. Request deletion of all negative credit reporting related to Plaintiffs' accounts; c. Correct all credit reporting to accurately reflect the cessation of the debts;

8. For costs of suit and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k, 15 U.S.C. §§ 1681n and 1681o, and California Civil Code § 1788.30;

9. For prejudgment and post-judgment interest as allowed by law;

10. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.


Dated: October 13, 2025          INGBER LAW GROUP



                              By: */s/ Jason M. Ingber*
                                     Jason M. Ingber
                                     Serach B. Shafa
                                     Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF